Grace E. Parasmo (308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7119 West Sunset Blvd., No. 808
Los Angeles, California 90046
Telephone: (646) 509-3913
*Additional counsel listed on signature page*

*Attorneys for Plaintiff Julia Greenfield,
on her own behalf, and on behalf
of all others similarly situated*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA GREENFIELD, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CROSS RIVER BANK, a New Jersey chartered bank, and DOES 1-100, inclusive,<br><br>    Defendants. | No. 3:21-cv-09296-MMC<br><br>**PLAINTIFF JULIA GREENFIELD'S FIRST AMENDED CLASS ACTION COMPLAINT** |
| CROSS RIVER BANK, a New Jersey chartered bank,<br><br>    Counter-Claimant,<br>    v.<br>JULIA GREENFIELD, an individual,<br><br>    Counter-Defendant. | |

Plaintiff Julia Greenfield ("Greenfield" or "Plaintiff") makes this complaint against Defendant Cross River Bank ("CRB"), as well as Does 1 to 100 (collectively, "Defendants"). Plaintiff's allegations as to her own actions are based on personal knowledge. The other allegations are based on their counsel's investigation and information and belief.

**Introduction**

1.      Greenfield alleges Defendants have violated the Equal Credit Opportunity Act (15 U.S.C. §§ 1691-1691f) ("ECOA") and its implementing Regulation B (12 C.F.R. Part 1002) during the course of denying loan applications under the Paycheck Protection Program ("PPP") established by the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 1101, 134 Stat. 286-94 (2020) (the "CARES Act").

2.      Where a creditor takes an adverse action against an applicant (like denying a PPP loan), ECOA and Regulation B require the creditor to provide the applicant with a statement of the specific reasons for such adverse action. *See* 15 U.S.C. § 1691(d)(2), (3); 12 C.F.R. 1002.9(a)(1). The statement of reasons for the adverse action must be "specific and must indicate the principal reason(s) for the adverse action." 15 U.S.C. § 1691(d); 12 C.F.R. § 1002.9 (a)(2), (b)(2). Generalized statements such as the fact that adverse action was based upon the creditor's internal policies or standards are insufficient. Further, the specific reasons disclosed "must relate to and accurately describe *the* factors actually considered" by the creditor. *See* 12 C.F.R. pt. 1002, Supp. I, ¶ 9(b)(2)-2 (official agency interpretation of 12 C.F.R. § 1002.9(b)(2)).

3.      Greenfield and Class Members (as defined below) completed PPP loan applications in 2021 with sufficient information for CRB to make a credit decision.

4.      CRB denied these loan applications and provided the following reasons for the denial: "Insufficient information or documentation to make a PPP credit decision" and "the application(s) referenced below was (were) not successful in this attempt for approval through our automated system." This vague and generalized statement of reasons for denying Greenfield and other Class Members' PPP applications was not true, accurate, or specific.

5.      In fact, CRB approved Greenfield's 2020 PPP loan based on the same underlying data in 2021, and CRB's automated system actually *initially approved and funded* certain 2021 PPP loans that were in the same batch of loan applications as Greenfield (but then clawed them back).

6.      Thus, CRB's statement of reasons did not disclose the principal reasons for the adverse action, nor did it describe the factors actually considered by CRB in denying Plaintiff

and Class Members' applications in violation of ECOA and Regulation B, 12 C.F.R. § 1002.9. CRB's adverse action notice was not specific enough to accurately notify them of the true reason for the denial of their PPP applications.

7. Greenfield brings this action on behalf of herself and others who are similarly situated. Greenfield asserts a claim under 15 U.S.C. § 1691e for punitive damages and the costs of the action, together with reasonable attorneys' fees as determined by the Court, for Greenfield and a class of applicants whose PPP loan applications CRB denied with the same erroneous, incomplete, noncompliant statement of reasons as Greenfield.

8. Greenfield also brings an individual claim for discrimination under 15 U.S.C. § 1691d(a)(3), and seeks punitive damages, actual damages and the costs of the action, together with reasonable attorneys' fees as determined by the Court.

**Parties**

9. Plaintiff Julia Greenfield is a natural person who resided in California at the time this action was filed and at all relevant times alleged in this Complaint.

10. Defendant Cross River Bank is an FDIC insured bank located in Fort Lee, New Jersey. Cross River Bank participated in the SBA's PPP as a lender and, as such, was authorized to lend, and did in fact lend, funds to eligible borrowers throughout the State of California and the United States under the terms of the PPP.

11. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 100, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein. On information and belief, all Doe Defendants are citizens of California.

12. Plaintiff is informed and believes and based thereon alleges that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents,

conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

13. All Defendants, including Does 1 through 100, are collectively referred to as "Defendants."

14. Whenever this complaint refers to any act of Defendants, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

**Jurisdiction and Venue**

15. CRB removed this action from California state court, alleging "this Court has subject matter jurisdiction over this action. *See*, *e.g.*, *Chen v. Chase Bank USA, N.A.*, 393 F. Supp. 3d 850 (N.D. Cal. 2019) (removal of substantially similar ECOA-based action to federal court from Alameda County Superior Court)." (ECF No. 1 ¶2 (citing 28 U.S.C. § 1331 (federal subject matter jurisdiction over "civil actions arising under [] laws [] of the United States")).) Plaintiff alleges the Court's continued subject matter jurisdiction is subject to Defendants' consent and applicable common law (including waiver and estoppel).

16. This Court has personal jurisdiction over CRB because many of the acts alleged herein were committed and injury was incurred in California, because it conducts operations and/or sales in California, and the acts alleged herein originated in or were directed to this District.

17. Venue is proper in this District under 28 U.S.C. § 1391(c) and 1440(a) because the action was removed to the district in which the state court action was pending.

**Plaintiff's Individual Allegations**

18. On August 4, 2020, CRB approved Greenfield's first PPP loan application. On September 15, 2020, CRB approved SBA forgiveness on the proceeds of that loan.

19. On information and belief, on January 19, 2021, Greenfield's proxy submitted a second PPP loan application to CRB. The income-related data in Greenfield's 2021 PPP application was consistent with her 2020 PPP loan application. Greenfield's 2021 loan application was complete and contained all the information CRB needed to approve her PPP loan. CRB acknowledged Greenfield's 2021 loan application was complete consistent with the allegations below.

20. On February 5, 2021, Greenfield's proxy received two or more emails from CRB under 15 U.S.C. § 1691(d)(4), which indicated CRB denied roughly fifty (50) applications submitted around the same time as Plaintiff. In the email, CRB stated:

> Thank you for applying for a Paycheck Protection Program (PPP) loan through Cross River. We appreciate your trust as you navigate these difficult times. Unfortunately, the application(s) referenced below was (were) not successful in this attempt for approval through our automated system. This will not prevent you from re-applying nor does it affect any subsequent applications you may have already submitted. If you believe you are eligible for the PPP, please review the required documents as well as helpful hints to ensure you can successfully re-apply.

Then, CRB listed roughly fifty loan applicants, and stated: "Reason for Denial: Insufficient information or documentation to make a PPP credit decision." CRB did not disclose the applicant's right to obtain a specific statement of reasons.

21. CRB has never identified what information or documentation it asserts is missing from the loan applications listed in the February 5, 2021 emails.

22. On information and belief, CRB received and used the same set of income-related data submitted with Greenfield's 2020 and 2021 loan applications. In January 2022, Defendant produced the draft Schedule Cs it contends were used in both Greenfield's 2020 and 2021 PPP applications. The documents CRB produced were .pdf files containing the exact same amounts for gross profit, expenses, and net profit.

23. CRB operated an online portal which accepted PPP loan applications. In 2020, the portal described uploading the applicant's "Most Recent Tax Return" as "Optional." On information and belief, in both 2020 and 2021, if a PPP loan applicant elected to submit an unfiled or draft Form 1040 Schedule C, CRB accepted these unfiled draft Schedule Cs to

substantiate the eligibility for the applied-for PPP amount.

24. The SBA rules at the time of the February 5, 2021 denial emails did not require Greenfield to submit verification documentation if she had already provided it in her 2020 application. "If the PPP loan is being made to an existing customer and the necessary information was previously verified, you do not need to re-verify the information." Small Business Administration, *Paycheck Protection Program Frequently Asked Questions (FAQs)* 6 (Jan. 29, 2021), https://www.sba.gov/sites/default/files/2021-01/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf.

25. CRB alleges that Greenfield's proxy was the "Ringleader" of a group "of connected persons" whose loans shared "the same indicia of fraud" which CRB discovered by the time they denied "Greenfield's then-pending 2021 application." (Def.'s Countercl. ¶¶5-6, 34, 40.)

26. Despite those allegations, CRB's February 5, 2021 email invited Greenfield, her proxy, and the proxy's other applicants to re-apply, stating the denial "will not prevent you from re-applying" and did not "affect any [other pending] applications you may have already submitted. If you believe you are eligible for the PPP, please review the required documents as well as helpful hints to ensure you can successfully re-apply."

27. CRB initially approved and funded other loan applications listed in the February 5, 2021 emails (but subsequently attempted to claw those loans back).

28. On information and belief, CRB later approved several PPP loans for borrowers whose PPP loan applications were denied in the February 5, 2021 emails.

29. ECOA provides applicants a right to a statement of reasons for any adverse action on a loan application. "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 169(d)(2).

30. Congress amended ECOA in 1976 to require creditors to provide applicants with written notice of the specific reasons why creditors took adverse action on credit decisions with respect to the applicants. Legislative history shows ECOA's notice requirements are a strong and necessary adjunct to the anti-discrimination purpose of the legislation, which not only discourage

discriminatory practices, and give applicants the chance to correct the situation if creditors acted on misinformation or inadequate information but also fulfill a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient.

> [T]his information should have a pervasive and valuable educational benefits. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already over-extended financial situation.

(S. Rep. No. 94-589 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 403, 406.)

31. To achieve this goal, ECOA imposes a minimal level of specificity. "A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(3). Regulation B (authorized under 15 U.S.C. § 1691b) further specifies:

> The statement of reasons for adverse action . . . must be specific and indicate the principal reason(s) for the adverse action. ***Statements that the adverse action was based on the creditor's internal standards or policies or that the applicant, joint applicant, or similar party failed to achieve a qualifying score on the creditor's credit scoring system are insufficient***.

12 C.F.R. § 1002.9(b)(2) (emphasis added).

32. The Consumer Financial Protection Bureau's Official Commentary to Regulation B makes clear that creditors can only deny applications as incomplete if the applicant needs to supply missing information *and* the creditor lacks sufficient data for a credit decision:

> 3. Incomplete application - denial for incompleteness. When an application is incomplete regarding ***information that the applicant can provide*** and the creditor lacks sufficient data for a credit decision, the creditor may deny the application giving as the reason for denial that the application is incomplete. . . .
>
> 4. Incomplete application - denial for reasons other than incompleteness. When an application is missing information but provides sufficient data for a credit decision, the creditor may evaluate the application, make its credit decision, and notify the applicant accordingly. If credit is denied, the applicant must be given the specific reasons for the credit denial (or notice of the right to receive the reasons); ***in this instance missing information or "incomplete application" cannot be given as the reason for the denial***.

12 C.F.R. pt. 1002, Supp. I, ¶ 9(a)(1)(3), (4) (official agency interpretation of 12 C.F.R. § 1002.9(a)(1); emphasis added.) Once creditors receive a PPP loan application, they must provide an adverse action notification, and cannot deny an otherwise complete PPP loan application as

incomplete because an SBA loan number (or other information from the SBA) is missing. (CFPB, *The Bureau's Equal Credit Opportunity Act and Regulation B FAQs related to the COVID-19 Emergency* 3-4, https://files.consumerfinance.gov/f/documents/cfpb_ecoa-regulation-b_faqs-covid-19.pdf (last updated May 6, 2020).).

33. CRB's response indicated "the application(s) referenced below was (were) not successful in this attempt for approval through our automated system," which did not comply with § 1002.9(b)(2).

34. Likewise, CRB's assertion there was "Insufficient information or documentation to make a PPP credit decision" was not a true, accurate, complete, and specific statement of its reasons for denying Plaintiff's application.

35. This response also failed to comply with 12 C.F.R. § 1002.9(c)(2) as a notice of incompleteness. If the creditor lacks sufficient data for a credit decision, it may elect to send the applicant a notice of incompleteness in lieu of an adverse action notice. *See* 12 C.F.R. § 1002.9 (c)(2). But CRB did not provide Greenfield with a notice of incompleteness as it never specified the information needed to complete the application, did not designate any period of time for Greenfield to provide the information, nor did it inform her that failure to provide the information requested will result in no further consideration being given to the application. *See* 12 C.F.R. § 1002.9(c)(2).

36. CRB's generalized statement of reasons fail to achieve the informative purposes legislated in the ECOA, and are not a true, accurate, complete, and specific statement of its reasons for denying Greenfield's application.

37. CRB developed actual and ostensible agents, conspirators, partners and/or joint venturers who participated in CRB's PPP underwriting process ("Third Parties"). In particular, CRB used a variety of marketing channels operated by such Third Parties to locate PPP borrowers and facilitate their PPP loan applications with CRB. Greenfield's proxy was and/or is such a Third Party.

## Class Allegations

38. CRB is a "creditor" under 15 U.S.C. § 1691a(e) because it regularly extends, renews, or continues credit, including PPP loans. CRB is a "creditor" under 12 C.F.R. § 1002.2(l) because it, "in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit."

39. The CARES Act provided that SBA reimbursed CRB for underwriting PPP loans. 15 U.S.C. 636(a)(36)(P). CRB received up to $325 million in such reimbursement for over 288,000 PPP loans. *See id*. CRB sought to maximize its profits by processing as many PPP loans as possible at the lowest cost and in the quickest time.

40. CRB's business is highly automated and uses uniform procedures and practices. CRB designed its PPP underwriting systems to increase its profits by reducing its expenses. On information and belief, CRB built its PPP underwriting process in eight days, and did not hire new employees to underwrite PPP loans. CRB relied very heavily on automated systems to underwrite PPP loans.

41. On information and belief, the automated systems used by CRB to evaluate Plaintiff and Class Members loans did not indicate why the systems had not approved particular PPP loans, or did not indicate why they had not approved particular PPP loans clearly, intelligibly, and/or in a manner that CRB could interpret. Rather, CRB only had the ability to determine at what stage of the review process the automated system flagged or rejected batches of applications but not why the system was unable to approve an individual loan.

42. ECOA regulatory guidance prohibits creditors from using machine learning systems to deny credit applications without understanding and communicating the real reason why the system denied any individual credit application:

> Creditors who use complex algorithms, including artificial intelligence or machine learning, in any aspect of their credit decisions must still provide a notice that discloses the specific principal reasons for taking an adverse action. . . . A creditor cannot justify noncompliance with ECOA and Regulation B's requirements based on the mere fact that the technology it employs to evaluate applications is too complicated or opaque to understand. A creditor's lack of understanding of its own methods is therefore not a cognizable defense against liability for violating ECOA and Regulation B's requirements.

CFPB, *Consumer Financial Protection Circular 2022-03* (May 26, 2022), https://www.consumerfinance.gov/compliance/circulars/circular-2022-03-adverse-action-notification-requirements-in-connection-with-credit-decisions-based-on-complex-algorithms/

43. CRB leveraged technology and its relationship with FinTechs to gain a competitive advantage in the PPP market. CRB took processes that were typically done manually and completely automated them. It used automated systems, complex algorithms, including artificial intelligence or machine learning, to process high volumes of loans at high speeds without human intervention or manual review, thereby reducing CRB's underwriting expenses and increasing its risk. As of May 2021, CRB had approved over 288,968 PPP loans worth over $6.5 billion, with an average loan size of $22,790. *See* Small Business Administration, Paycheck Protection Program (PPP) Report: Approvals Through May 23, 2021 (May 23, 2021) available at www.sba.gov/sites/default/files/2021-05/PPP_Report_Public_210523-508.pdf.

44. Further, whereas other banks, such as JP Morgan Chase Bank, prioritized making PPP loans to existing customers who had an existing relationship and had already been screened, CRB sacrificed underwriting quality for loan volume: it never required potential borrowers to have a pre-existing relationship with Cross River to apply for PPP loans.

45. CRB operated an online portal to receive PPP loan applications. CRB notified applicants that their application with CRB was complete in two different ways. First, the portal displayed a green box stating "Application Complete" after supporting documentation was uploaded into the portal, together with the following message:

> Application Complete!
> Thank you for your loan application. Cross River is working on processing your application and we will be in touch soon. In the meantime, you can check the status of your application with the link below…

On information and belief, Greenfield's proxy received this message when she completed Greenfield's PPP loan application on or about January 20, 2021.

46. In addition, or in the alternative, CRB noticed applicants that their application was complete when the applicant clicked on a link in an email sent by CRB, which displayed a notification listing the current status of the application in question.

47. On February 5, 2021, Greenfield's proxy received two or more emails from CRB under 15 U.S.C. § 1691(d)(4), which indicated CRB denied roughly fifty (50) applications submitted at roughly the same time as Greenfield. The subject line for these emails was "PPP Application Unable to Process – Statement of Credit Denial." For each such application, CRB stated "Unfortunately, the application(s) referenced below was (were) not successful in this attempt for approval through our automated system" and "Reason for Denial: Insufficient information or documentation to make a PPP credit decision," and an "Application Date" identifying when the applicant had completed their application.

48. The February 5, 2021 emails were standardized, and the statement of reasons for denial was designed to be a catch-all response that could apply when the automated system was unable to process PPP loan applications for any number of reasons. On information and belief, CRB lacked an adequate understanding of the methods the algorithm employed to evaluate PPP loan applications. Although CRB could manually review a loan application rejected by the system and devise a post-hoc justification for the denial of credit, CRB was unable to accurately determine the principal reasons the system in fact denied an individual's PPP loan application.

49. Because CRB leveraged the PPP program to scale, its business but did not have the necessary infrastructure to manually underwrite or review the volume of PPP loan applications it was processing, it chose to utilize such vague language for each denial regardless of the actual reason. This policy, again, was designed to minimize human intervention and reduce CRB's underwriting expenses.

50. CRB's statement of reasons was not a true, accurate, and complete statement of its reasons for denying the PPP applications of Greenfield and other Class Members, and CRB did not disclose the principal reason or factors actually considered for denying their applications. CRB committed the same violations of 15 U.S.C. § 1691(d) against other PPP loan applicants as it committed against Greenfield. CRB's statement of its reasons for denying these applications violated 15 U.S.C. § 1691(d) and Regulation B, 12 C.F.R. § 1002.9.

51. CRB also did not provide Greenfield and Class Members with a notice of incompleteness; CRB elected to provide them with adverse action notices denying their

applications.

52. CRB's violations of 15 U.S.C. § 1691(d) and Regulation B, 12 C.F.R. § 1002.9 were particularly blameworthy acts, and wanton, malicious, oppressive, and/or in reckless disregard of ECOA.

**Class Certification Allegations**

53. **Class Definition:** Greenfield seeks to certify a class and brings this Complaint against the Defendants, pursuant to Federal Rule 23(b)(2) and (b)(3), on behalf of herself and the following classes:

> All PPP loan applicants located in the United States (1) who, in 2021, completed a loan application to Cross River Bank and received a "Application Complete!" message from Cross River Bank's portal(s); (2) who were given the following reason for denial: "Reason for Denial: Insufficient information or documentation to make a PPP credit decision" and/or "Unfortunately, the application(s) referenced below was (were) not successful in this attempt for approval through our automated system," and (3) who did not receive any other statement of reasons for Cross River Bank's denial of their PPP loan application from Cross River Bank within 30 days of such denial.

In addition, or in the alternative, Greenfield seeks to certify the following class:

> All PPP loan applicants located in the United States (1) who, in 2020, received a PPP loan from Cross River Bank and (2) who, in 2021, completed a loan application to Cross River Bank using data consistent with their 2020 PPP loan application; (3) who were given the following reason for denial: "Reason for Denial: Insufficient information or documentation to make a PPP credit decision" and/or "Unfortunately, the application(s) referenced below was (were) not successful in this attempt for approval through our automated system," and (4) who did not receive any other statement of reasons for Cross River Bank's denial of their PPP loan application from Cross River Bank within 30 days of such denial.

Excluded from the class are CRB, any entity in which CRB has a controlling interest or which has a controlling interest in CRB, and CRB's agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the class are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Greenfield reserves the right to revise the definition of the class based on facts learned during discovery. Greenfield is a member of the Class that she seeks to represent.

54. **Class Numerosity:** The exact number of class members is unknown and is not available to Greenfield at this time, but such information is readily ascertainable by CRB. On

information and belief, Greenfield believes there are more than fifty (50) Class Members. Individual joinder of all Class Members is likely to be impracticable.

55. **Class Commonality:** Common questions of fact and law exist as to all class members and predominate over the questions affecting only individual class members. Identification of the individuals who qualify as Class Members will be sufficient to establish entitlement to relief.

56. **Typicality:** Greenfield's claims are typical of the claims of the other members of the class. Greenfield is not different in any relevant way from any other Class Member, and the relief she seeks is common to the class.

57. **Adequate Representation:** Greenfield will fairly and adequately represent and protect the interests of the other Class Members: her interests do not conflict with the other class members' interests. Greenfield has retained counsel competent and experienced in complex class actions, and they intend to prosecute this action vigorously.

58. **Predominance and Superiority:** The Class alleged in this Complaint is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by CRB's actions. It would be virtually impossible for Class Members to individually obtain effective relief from CRB's misconduct. Even if Class Members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

# FIRST CAUSE OF ACTION:
### Violation of the Equal Credit Opportunity Act (15 U.S.C. § 1691) and Regulation B (12 C.F.R. § 1002.9) by Plaintiff individually and on behalf of the Class, against all Defendants

59. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

60. Defendants are "creditors" under 15 U.S.C. § 1691a(e) and 12 C.F.R. § 1002.2(l).

61. Plaintiff and the other Class Members are "applicants" under 15 U.S.C. § 1691a(b) and because they applied to CRB for an extension of credit.

62. Plaintiff and the other Class Members are "applicants" under 12 C.F.R. § 1002.2(e) because they requested or actually received an extension of credit from CRB, and are or may become contractually liable regarding an extension of credit, including PPP loans.

63. CRB denied the PPP loan applications of the Plaintiff and the Class. CRB's conduct constitutes an "adverse action" under 15 U.S.C. § 1691(d)(6) because it was a denial of credit, or a refusal to grant credit in substantially the amount or on substantially the terms requested.

64. ECOA provides applicants a right to a statement of reasons for any adverse action on a loan application. "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2); 12 C.F.R. § 1002.9(a)(1). To achieve this goal, ECOA imposes a minimal level of specificity. "A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(3).

65. CRB's statement of reasons did not comply with 15 U.S.C. § 1691(d)(3) or 12 C.F.R. § 1002.9. CRB's statement of reasons was not a true, accurate, complete, and specific statement of its reasons for denying the PPP loan applications of Greenfield and the other Class Members. CRB did not disclose the principal reasons or factors actually considered in denying PPP loan applications of Greenfield and the other Class Members. CRB's violations of 15 U.S.C. § 1691(d) and Regulation B were particularly blameworthy acts, wanton, malicious, oppressive, and/or in reckless disregard of ECOA.

66. Defendants' violations of 15 U.S.C. § 1691(d)(3) and 12 C.F.R. § 1002.9 arise, in part, from the fundamental weaknesses in Defendants' underwriting standards, evidenced in the allegations above. Class Members may seek credit from CRB again at some point in the future, and they risk exposure to future ECOA violations because of these weaknesses. Greenfield lacks adequate remedies at law to address these weaknesses.

67. Greenfield, on her own behalf, and behalf of the other class members, seek to recover punitive damages from Defendants for their ECOA violations, in an amount to be determined at trial, equitable and declaratory relief, and the costs of the action, together with reasonable attorney's fees as determined by the Court under 15 U.S.C. § 1691e(b), (d) and California Code of Civil Procedure section 1021.5.

**SECOND CAUSE OF ACTION:**
**Violation of the Equal Credit Opportunity Act (15 U.S.C. § 1691(a)(3)) and Regulation B (12 C.F.R. § 1002.4(a)) by Plaintiff individually against all Defendants**

68. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

69. Defendants are "creditors" under 15 U.S.C. § 1691a(e) and 12 C.F.R. § 1002.2(l).

70. Plaintiff and the other Class Members are "applicants" under 15 U.S.C. § 1691a(b) and because they applied to CRB for an extension, renewal, or continuation of credit.

71. "A creditor shall not discriminate against an applicant on a prohibited basis regarding any aspect of a credit transaction." 12 C.F.R. § 1002.4(a). The ECOA prohibits creditors from "discriminat[ing] against any applicant, with respect to any aspect of a credit transaction [] because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a)(3).

> The general rule stated in § 1002.4(a) covers all dealings, without exception, between an applicant and a creditor, whether or not addressed by other provisions of the regulation [including] administration of accounts, and treatment of delinquent or slow accounts. . . .

12 C.F.R. pt. 1002, Supp. I, ¶ 4(a)(1) (official agency interpretation of 12 C.F.R. § 1002.4(a)). *See also Haynie v. Veneman*, 272 F. Supp. 2d 10, 18 (D.D.C. 2003) (phrase "with respect to any aspect of a credit transaction" covers "acts surrounding an application for credit that materially

affect the applicant's ability to obtain the desired credit," including "allegations of what occurred after defendant's denial of [plaintiff's] loan application").

72. Greenfield exercised her rights under 15 U.S.C. § 1691(d) and (e) in good faith when she filed her lawsuit against Defendants on November 1, 2021.

73. The parties met and conferred about their respective claims in early 2022. On March 15, 2022, Greenfield sent CRB correspondence and documentation indicating that CRB's counterclaims lacked a factual and legal basis.

74. On May 23, 2022, CRB filed a counterclaim seeking various relief against Greenfield, including "its regulatory investigative costs" related to her PPP loans and "restitution" of all loan proceeds from Greenfield's 2020 PPP loan. (ECF No. 47 at 15:12-13, 16:11-18.)

75. CRB asserts that the "damages it seeks [from Greenfield] are limited to its regulatory investigative costs." (ECF No. 47 at 15:12-13. *Cf.* Def.'s Countercl. ¶¶8, 45-46, 58-59.)

76. The SBA reimbursed CRB approximately $1025 for processing Ms. Greenfield's 2020 PPP loan application under the CARES Act. 15 U.S.C. 636(a)(36)(P). This reimbursement (approximately $1025) was intended to cover CRB's "regulatory investigative costs."

77. As of May 2021, CRB had approved over 280,000 PPP loans worth over $6.5 billion. *See* Small Business Administration, *Paycheck Protection Program (PPP) Report: Approvals Through May 23, 2021* (May 23, 2021) available at www.sba.gov/sites/default/files/2021-05/PPP_Report_Public_210523-508.pdf.

78. Defendants knew at least by June 8, 2020 that CRB had serious deficiencies in its underwriting practices, and assert "over 150 PPP loan applicants in the Fraud Ring" alleged in its counterclaim. (Def.'s Countercl. ¶36.)

79. CRB was reportedly involved in over 30 percent of the approved loans issued by FinTechs or their bank partners that were subject to U.S. Department of Justice prosecutions. (House of Representatives, Select Subcommittee on the Coronavirus Crisis, *Letter to Gilles Gade President and Chief Executive Officer, Cross River Bank* 1, 5 (dated May 27, 2021),

https://coronavirus.house.gov/sites/democrats.coronavirus.house.gov/files/2021-05-27.Clyburn%20to%20Cross%20River%20re%20FinTech%20PPP%20Fraud.pdf.)

80. Despite these facts, on information and belief, Greenfield is the only PPP borrower that CRB has only ever sued to recover its "regulatory investigative costs" for PPP loans, to seek restitution of PPP loans, or otherwise alleging PPP fraud.

81. CRB discriminated against Greenfield with respect to her PPP loan applications and repayment on the basis of her ECOA lawsuit against Defendants. "Disparate treatment on a prohibited basis is illegal whether or not it results from a conscious intent to discriminate." 12 C.F.R. pt. 1002, Supp. I, ¶ 4(a)(1) (official agency interpretation of 12 C.F.R. § 1002.4(a)). CRB's counterclaim against Greenfield was filed with retaliatory motive: to dissuade Greenfield and other Class Members from exercising their rights under ECOA.

82. CRB's violations of 15 U.S.C. § 1691(a)(3) and 12 C.F.R. § 1002.4(a) were particularly blameworthy acts, wanton, malicious, oppressive, and/or in reckless disregard of ECOA.

83. Defendants' counterclaim has caused Greenfield emotional distress and lost time.

84. Greenfield seeks to recover actual damages and punitive damages from Defendants for their ECOA violations, in an amount to be determined at trial, and the costs of the action, together with reasonable attorney's fees as determined by the Court under 15 U.S.C. § 1691e(b), (d) and California Code of Civil Procedure section 1021.5.

WHEREFORE, Greenfield prays that the Court enter judgment and orders in her favor and against Defendant Cross River Bank and Does 1 to 100 as follows:

    a. An order certifying the class, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the class;

    b. Actual damages against Defendants, and in favor of Plaintiff under 15 U.S.C. § 1691e(a);

    c. Statutory damages against Defendants, and in favor of Plaintiff and other Class Members, consistent with 15 U.S.C. § 1691e(b);

    d. Equitable and declaratory relief as this Court may deem appropriate, in favor of Plaintiff and other Class Members under 15 U.S.C. § 1691e(c);

    e. An order granting costs, together with a reasonable attorneys' fee, under 15

U.S.C. § 1691e(d) and Code of Civil Procedure section 1021.5 in favor of the class;

f.    Such other and further relief as this Court may deem appropriate.

Dated: August 15, 2022

By: /s/ Grace E. Parasmo
Grace E. Parasmo (308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7119 West Sunset Blvd., No. 808
Los Angeles, California 90046
Telephone: (646) 509-3913

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Julia Greenfield, on her own behalf, and behalf of all others similarly situated*

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: August 25, 2022

By: /s/ Grace E. Parasmo
Grace E. Parasmo (308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7119 West Sunset Blvd., No. 808
Los Angeles, California 90046
Telephone: (646) 509-3913

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Julia Greenfield, on her own behalf, and behalf of all others similarly situated*