IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA GREENFIELD,<br><br>        Plaintiff,<br><br>    v.<br><br>CROSS RIVER BANK,<br><br>        Defendant. | Case No.  21-cv-09296-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND STRIKE; GRANTING DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS; AFFORDING PLAINTIFF LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

Before the Court are two motions filed September 28, 2022, by defendant Cross River Bank ("CRB"):  (1) "Motion to Dismiss Second Cause of Action and to Strike Under Fed. R. Civ. P. 12(f)"; and (2) "Motion to Strike Class Allegations Under Fed. R. Civ. P. 23(d)(1)(D)."  The motions have been fully briefed.  Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

**A.  Motion to Dismiss/Strike**

In the first of the two above-referenced motions, CRB seeks an order dismissing for failure to state a claim the Second Cause of Action alleged in plaintiff Julia Greenfield's ("Greenfield') First Amended Class Action Complaint ("FAC"), and, in addition, an order striking from the FAC a paragraph that, CRB asserts, contradicts allegations in Greenfield's initial Complaint.

**1.  Dismissal: Second Cause of Action**

In her initial Complaint, Greenfield asserted against CRB a single Cause of Action,

---

[1] By order filed December 6, 2022, the Court took the matters under submission.

United States District Court
Northern District of California

titled "Violation of the Equal Credit Opportunities Act ["ECOA"] (15 U.S.C. § 1691) and Regulation B (12 C.F.R. § 1002.9)." In support thereof, Greenfield alleged that CRB had denied an application she submitted in 2021 for a loan under the Paycheck Protection Program ("PPP"), and, in so doing, failed, in violation of 15 U.S.C. § 1691(d) and 12 C.F.R. § 1002.9, to provide her with a statement containing "specific reasons for the denial" that were "accurate[ ]." (See Complaint ¶¶ 3-7, 44.) In response to the Complaint, CRB filed an "Answer . . . [and] Counter-Complaint," wherein CRB asserts three Counterclaims, all based on CRB's allegations that Greenfield, prior to having submitted the PPP loan application referenced in her initial Complaint, had submitted in 2020 an application that "contained a false net profit figure for her business," on which CRB "reasonabl[y] rel[ied]." (See Answer and Counter-Complaint ¶¶ 1, 28, 45.) Greenfield thereafter filed her FAC, in which she realleged as the First Cause of Action the claim alleged in her initial Complaint and added a Second Cause of Action, which latter claim CRB challenges by the instant motion.

In her Second Cause of Action, titled "Violation of [ECOA] (15 U.S.C. § 1691(a)(3)) and Regulation B (12 C.F.R. § 1002.4(a))," Greenfield alleges that CRB's Counterclaims were, in violation of 15 U.S.C. § 1691(a) and 12 C.F.R. § 1002.4(a), "filed with [a] retaliatory motive," specifically, to "dissuade Greenfield . . . from exercising [her] rights under ECOA." (See FAC ¶ 81.)

Pursuant to ECOA, it is "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction," based on the applicant's "ha[ving] in good faith exercised any right under [ECOA]." See 15 U.S.C. § 1691(a). Regulation B provides that "a creditor shall not discriminate against an application on a prohibited basis regarding any aspect of a credit transaction." See 12 C.F.R. § 1002.4(a).

CRB argues Greenfield's Second Cause of Action fails to state a cognizable claim, for the asserted reason that Greenfield has not alleged facts to support a finding that CRB's filing of its Counterclaims constituted an "aspect of a credit transaction," there

being, according to CRB, no credit relationship between Greenfield and CRB at the time the Counterclaims were filed.  As set forth below, the Court agrees.

In a regulation promulgated by the Bureau of Consumer Financial Protection ("the Bureau"),[2] the term "credit transaction" is defined as "every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit."  See 12 C.F.R. § 1002.2(m).  Greenfield does not allege that, at the time CRB filed its Counterclaims, she had a pending application for credit or any existing extension of credit.  Although Greenfield argues a claim under §1691(a) and § 1002.4(a) can be predicated on conduct taken by a lender after the applicant's relationship with the creditor has ended, Greenfield cites no authority in support of the position she takes.  Rather, the claims found actionable by the two authorities cited by Greenfield were brought by borrowers who, unlike Greenfield, had existing accounts at the time the creditor allegedly engaged in discriminatory conduct.  See, e.g., Wilson v. Toussie, 260 F. Supp. 2d 530, 540 (E.D. N.Y. 2003) (finding "the grant of loans in a predatory manner is actionable under [§ 1691(a)]); Sharp v. Chartwell Financial Services Ltd., 2000 WL 283095, at *4 (N.D. Ill. March 6, 2000) (finding "existing customer" stated claim under §1691(a) based on allegation creditor's employee, in attempting to collect repayment, "invoked both racial and gender-based epithets"); see also Federal Deposit Ins. Corp. v. Allen, 1988 WL 361044, at *2 (W.D. Okla. November 3, 1988) (noting "[a] consumer is protected by ECOA throughout the life of the credit account").

Lastly, the Court finds unpersuasive Greenfield's reliance on a recent "advisory opinion" written by the Bureau, in which the Bureau states that the term "credit transaction" includes "transaction[s] that take place after credit has been extended," see 87 Fed. Reg. 30,097 at 30,099 (May 18, 2022), such as "a revocation of credit or an unfavorable change in the terms of a credit arrangement," see id. at 30,098.  Nothing in

---

[2] The Bureau has been directed by Congress to "prescribe regulations to carry out the purposes of [ECOA]."  See 15 U.S.C. § 1691b(a).

United States District Court
Northern District of California

the Bureau's opinion, however, suggests § 1691(a) applies to transactions after the applicant's relationship with the lender has ended.  Rather, the cited opinion explains that § 1691(a) applies to "applicants who have received credit and are <u>existing</u> account holders, not just those in the process of applying for credit."  <u>See</u> <u>id.</u> (emphasis added).

Accordingly, to the extent CRB seeks dismissal of the Second Cause of Action, the motion will be granted, and said Cause of Action will be dismissed without leave to amend.

**B. Striking: Paragraph 37 of FAC**

In the FAC, Greenfield alleges that her 2021 PPP loan application was submitted to CRB by an individual who acted as her "proxy" (<u>see</u> FAC ¶ 19) and whom she further describes as one of CRB's "actual and ostensible agents, conspirators, partners, and/or joint venturers" (<u>see</u> FAC ¶ 37).  In support of such description, Greenfield alleges "CRB used a variety of marketing channels operated by . . . [t]hird [p]arties to locate PPP borrowers and facilitate their PPP loan applications with CRB," and that "Greenfield's proxy was and/or is such a [t]hird [p]arty."  (<u>See</u> <u>id.</u>)

CRB seeks an order striking from the FAC paragraph 37, the paragraph containing the description of the above-referenced proxy as an agent of CRB.  CRB argues an order to such effect is warranted, on the asserted ground that such description contradicts allegations made in Greenfield's initial Complaint, wherein Greenfield described the individual as an "independent loan agent" (<u>see</u> Compl. ¶ 20) and as "[p]laintiffs' "loan agent" (<u>see</u> Compl. ¶¶ 22, 28).[3]

At the outset, the Court notes that the allegations in the two pleadings are not necessarily inconsistent, in that, "[u]nder long-accepted agency principles, a person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other."  <u>See</u> <u>Dazo v.</u>

---

[3] The initial Complaint was filed by Greenfield and two other individuals.  The two additional plaintiffs subsequently dismissed their claims.

United States District Court
Northern District of California

1  Globe Airport Security Services, 295 F.3d 934, 939 (9th Cir. 2002) (internal quotation,

2  alteration, and citation omitted).  Even assuming, however, paragraph 37 can only be

3  read as inconsistent with or in contradiction of the initial Complaint's allegation as to

4  agency, the Ninth Circuit has held "there is nothing in the Federal Rules of Civil

5  Procedure to prevent a party from filing successive pleadings that make inconsistent or

6  even contradictory allegations," and, consequently, "[a] district court has no free-standing

7  authority to strike pleadings simply because it believes that a party has taken inconsistent

8  positions in the litigation."  See PAE Government Services, Inc. v. MPRI, Inc., 514 F.3d

9  856, 858-860 (9th Cir. 2007).[4]

10       Accordingly, to the extent CRB seeks an order striking paragraph 37 from the

11  FAC, the motion will be denied.

**B.  Motion to Strike Class Allegations**

13       Greenfield's First Cause of Action, by which, as noted, she asserts violations of

14  § 1691(d) and of § 1002.9(a)(2), is brought both on behalf of herself individually and on

15  behalf of a class.  CRB seeks an order striking the class allegations.

16       ECOA provides that, when a "creditor" takes "adverse action" against an

17  "applicant," it must provide a "statement[ ] of reasons in writing" that "contains the specific

18  reasons for the adverse action taken."  See 15 U.S.C. § 1691(d)(2).  Regulation B

19  similarly provides that, "when adverse action is taken," the creditor must provide a written

20  notification that contains a "statement of specific reasons for the action taken."  See 12

21  C.F.R. § 1002.9(a)(2).  The Bureau, in its "official interpretation," states "[t]he specific

22  reasons disclosed under [Regulation B] must relate to and accurately describe the factors

23  actually considered or scored by a creditor."  See 12 C.F.R. pt. 1002, Supp. I,

24  § 1002.9(b)(2)-2.

---

26      [4] Although a court, at least where the plaintiff "is given an opportunity to respond
under the procedures of Rule 11," may strike "inconsistent allegations" made in "bad
27  faith," see id. at 860, in this instance CRB has not argued Greenfield, by including
paragraph 37 in the FAC, has acted in bad faith.
28

United States District Court
Northern District of California

Here, Greenfield alleges, her proxy submitted her 2021 application by "upload[ing]" her "supporting documentation" into CRB's "online portal" and thereafter received a "message" stating "Application Complete!" (see FAC ¶ 45), and that CRB, in later denying her application, sent her proxy an email in which CRB stated, "[u]nfortunately, the application(s) referenced below was (were) not successful in this attempt for approval through [CRB's] automated system," after which CRB "listed roughly fifty loan applicants" and then further stated, "[r]eason for [d]enial: [i]nsufficient information or documentation to make a PPP credit decision."  (See FAC ¶ 20.) According to Greenfield, the applications referenced in the above-quoted email contained, contrary to CRB's email, "sufficient information for CRB to make a credit decision" (see FAC ¶ 3) and, consequently, that the above-quoted reason for denial was "not true, accurate, or specific" (see FAC ¶ 4).

Based on the above allegations, Greenfield, in addition to bringing an individual claim, seeks to certify the following two classes:

> All PPP loan applicants located in the United States (1) who, in 2021, completed a loan application to Cross River Bank and received a "Application Complete!" message from Cross River Bank's portal(s); (2) who were given the following reason for denial: "Reason for Denial: Insufficient information or documentation to make a PPP credit decision" and/or "Unfortunately, the application(s) referenced below was (were) not successful in this attempt for approval through our automated system," and (3) who did not receive any other statement of reasons for Cross River Bank's denial of their PPP loan application from Cross River Bank within 30 days of such denial.

> All PPP loan applicants located in the United States (1) who, in 2020, received a PPP loan from Cross River Bank and (2) who, in 2021, completed a loan application to Cross River Bank using data consistent with their 2020 PPP loan application; (3) who were given the following reason for denial: "Reason for Denial: Insufficient information or documentation to make a PPP credit decision" and/or "Unfortunately, the application(s) referenced below was (were) not successful in this attempt for approval through our automated system," and (4) who did not receive any other statement of reasons for Cross River Bank's denial of their PPP loan application from Cross River Bank within 30 days of such denial.

(See FAC ¶ 53.)

//

1    In moving for an order striking the class allegations, CRB argues the proposed

2    classes are fail-safe and, in addition, would require individualized determinations.

3        **1. Fail-Safe Classes**

4        A fail-safe class is one "defined so narrowly as to preclude membership unless the

5    liability of the defendant is established."  See Ruiz Torres v. Mercer Canyons, Inc., 835

6    F.3d 1125, 1138 n.7 (9th Cir. 2016) (internal quotation, citation, and alteration omitted).

7        Here, CRB relies on Greenfield's allegation that both putative classes consist of

8    persons "who, in 2021, completed a loan application" (see FAC ¶ 53), which phrase,

9    CRB argues, is a statement that the class members submitted applications that were

10   complete, i.e., applications that provided CRB with "sufficient data for a credit decision,"

11   see 12 C.F.R. Pt. 1002, Supp. I, ¶ 9(a)(1)-3 (defining "incomplete application" as

12   application that "lacks sufficient data for a credit decision); see also 12 C.F.R. § 1002.2(f)

13   (defining "completed application" as "an application in connection with which the creditor

14   has received all the information that the creditor regularly obtains and considers in

15   evaluating applications for the amount and type of credit requested").

16       In so alleging, Greenfield uses "completed" as a conclusion that CRB received all

17   material necessary to make a credit decision, i.e., her use of the word defines the class in

18   a manner that limits membership to those who will prevail (see FAC ¶ 3) (alleging

19   Greenfield and putative class members "completed PPP loan applications in 2021 with

20   sufficient information for CRB to make a credit decision")), and, consequently, the class

21   definitions are deficient.  Greenfield, however, states, as to the first of the two class

22   definitions, she is prepared to remove the words "completed an application to Cross River

23   Bank and," or to substitute "submitted" for "completed" (see Pl.'s Opp. at 10:5-15), and,

24   as to the second of the two class definitions, to substitute "submitted" for "completed"

25   (see id.).

26       Accordingly, the class allegations are subject to dismissal, with leave to amend as

27   proposed.

28   //

United States District Court
Northern District of California

**2. Need for Individualized Determinations**

By order filed July 26, 2022, the Court granted CRB's motion to strike the class allegations contained in the initial Complaint, finding Greenfield had failed to show a determination as to whether class members' applications were complete could be conducted without engaging in an individualized review of each application. Greenfield was, however, afforded leave to amend.

In amending, Greenfield has added allegations pertaining to the manner in which CRB processed the applications she and the putative class members submitted, which allegations the Court, as set forth below, finds sufficient at the pleading stage to allege circumstances that, if established by Greenfield, would not appear to require individualized determinations.

In particular, Greenfield, as noted, now alleges that, after she submitted her application, she received from CRB a message stating, "Application Complete!" (see FAC ¶ 45), a statement that could be understood as an admission as to the adequacy of the material both submitted by Greenfield and by all putative class members who received the same message.[5] Additionally, Greenfield now alleges that CRB's review "processes" were "completely automated" and "without human intervention" (see FAC ¶ 43), that "the automated systems used by CRB . . . did not indicate why the systems had not approved particular PPP loans" (see FAC ¶ 41), and that CRB knew "the automated system flagged or rejected batches of applications but not why the system was unable to approve an individual loan" (see id.), allegations that, if established, could support a class-wide finding that the reason for denial given, i.e., incompleteness of the class members'

---

[5] As set forth above, the first of the two proposed classes is limited to persons who received the same message. The second of the two proposed classes, while not expressly limited in the same manner, is defined by what would appear to be a similar, but implicit, acknowledgement of completeness, given CRB's acceptance of those class members' earlier applications, which acceptance, as with the first class, was followed by an allegedly inconsistent rejection. Although, as to the second, such allegation is based on the submission of applications containing "data consistent with" the class members' earlier applications, thereby, arguably, requiring an individualized comparison, that issue has not been raised in the parties' papers presently before the Court.

United States District Court
Northern District of California

1    respective applications, was not the reason "actually considered" by CRB.  See 12 C.F.R.

2    Pt. 1002, Supp. I, ¶ 9(b)(2)-2 (providing "[t]he specific reasons disclosed . . . must relate

3    to and accurately describe the factors actually considered or scored by a creditor"); see

4    also 12 C.F.R. Pt. 1002, App. C., comment 4 (providing "[i]f the reasons listed on the form

5    are not the factors actually used, a creditor will not satisfy the notice requirement by

6    simply checking the closest identifiable factor listed").

7        Although CRB, in its motion, asserts it determined Greenfield's application was

8    incomplete "based on its review of the contents of her 2021 application file against the

9    relevant PPP regulations" (see Def.'s Mot. at 9:1-3), such contradictory assertions cannot

10   be considered at the pleading stage.  See Buonomo v. Optimum Outcomes, Inc., 301

11   F.R.D. 292, 295 (N.D. Ill 2014) (holding where "dispute concerning class certification is

12   factual in nature," motion to strike at pleading stage is "premature") (citing cases).  Lastly,

13   although CRB points out that the FAC alleges "CRB could manually review a loan

14   application rejected by the system" (see FAC ¶ 48), the FAC does not allege that CRB in

15   fact engaged in any such manual review and, indeed, as noted, alleges CRB processed

16   PPP loan applications "without human intervention" (see FAC ¶ 43).

17       Accordingly, the class allegations are not subject to striking on the asserted

18   ground an individualized would be necessary.

19                                    **CONCLUSION**

20       For the reasons stated above:

21       1.  CRB's Motion to Dismiss Second Cause of Action and to Strike Under Fed. R.

22   Civ. P. 12(f) is hereby GRANTED in part and DENIED in part, as follows:

23           a.  To the extent CRB seeks dismissal of the Second Cause of Action, the

24   motion is GRANTED, and the Second Cause of Action is hereby DISMISSED without

25   leave to amend; and

26           b.  To the extent CRB seeks an order striking from the FAC paragraph 37,

27   the motion is hereby DENIED.

28   //

2.  CRB's Motion to Strike Class Allegations is hereby GRANTED and the class allegations are hereby STRICKEN with leave to file, no later than January 27, 2023, 2023, a Second Amended Complaint for purposes of amending the class definitions.

Lastly, in light of the above, the Case Management Conference is hereby CONTINUED from January 27, 2023, to March 17, 2023, at 10:30 a.m.  A Joint Case Management Statement shall be filed no later than March 10, 2023.

**IT IS SO ORDERED.**

Dated:  January 13, 2023

MAXINE M. CHESNEY
United States District Judge

United States District Court
Northern District of California